**PEERLESS DENTAL SUPPLY CO., Inc.**

v.

**WEBER DENTAL MANUFACTURING COMPANY**

and

**Heinsheimer Dental Supplies, Inc.**

**Civ. A. No. 42985.**

United States District Court
E. D. Pennsylvania.
April 21, 1969.

A. E. Hurshman, Philadelphia, Pa., for plaintiff.

Israel Packel, Philadelphia, Pa., for defendant Heinsheimer Dental Supplies, Inc.

## OPINION

MASTERSON, District Judge.

Defendant, Heinsheimer Dental Supplies, Inc. (hereafter Heinsheimer) has moved that the non-federal causes of action alleging tortious interference with the plaintiff's customer relationships, libel and slander be dismissed for want of jurisdiction. For the reasons set forth hereafter this motion is denied.

This is an action by Peerless Dental Supply Co., Inc. (hereafter Peerless) charging that the Weber Dental Manufacturing Company (hereafter Weber) conspired with Heinsheimer to restrain trade contrary to Section 1 of the Sherman Antitrust Act, Title 15, U.S.C. § 1, that Weber and Heinsheimer tortiously interfered with Peerless' customer relationships and that Heinsheimer engaged in libel and slander against Peerless.

The record of the case indicates that the dispute arose when Weber, an Ohio corporation engaged in the manufacture of dental equipment and supplies, refused to make any further sales to, or through, Peerless. For more than twenty years Weber had utilized Peerless as an authorized distributor and independent dealer selling Weber manufactures. Weber discontinued this relationship on or about April 10, 1967. The plaintiff alleges that this was done arbitrarily, without cause and without any previous notice. Weber explains its unilateral discontinuance of the relationship asserting

that the plaintiff had violated the terms and conditions of sale under which Weber offered its goods, specifically that Peerless sold Weber products beyond the normal range of Peerless' service facilities.

The effect of Weber's termination was to bar Peerless from further dealing in Weber's products. It is averred that these can not be obtained from any source other than the manufacturer. Weber not only refused to fill orders placed by Peerless for new equipment, but also refused to sell service parts and to honor the orders it had received from Peerless prior to its suspension of dealings. Instead it notified the dentists in whose name Peerless had submitted orders that such orders would not be shipped through Peerless, but could be had only if delivery was made through the defendant Heinsheimer. Dentists who had traded with Peerless were contacted by Heinsheimer and their orders were solicited.[1]

These actions of Weber and Heinsheimer form the basis of Peerless' allegation that Weber and Heinsheimer engaged in concerted activity to bar Peerless from dealing in Weber's products and to substitute Heinsheimer for Peerless as an authorized Weber distributor without sacrificing the customer relationships which Peerless had established during its years of service in that capacity. In addition they also form the gravamen of the plaintiff's claim under state law that the defendants have tortiously interfered with Peerless' customer relationships.

Peerless also alleges that Heinsheimer's employees repeatedly informed dentists who had previously been customers of the plaintiff that Peerless was out of business and could no longer serve the dental trade because it had merged with the Ark Dental Supply Co. The plaintiff asserts that as these representations were false, Heinsheimer, acting through its agents and employees, libeled and slandered the plaintiff, in carrying out its role in the conspiracy to eliminate Peerless as a dealer in dental equipment and supplies.

The motion now before this court is a narrow one attacking only plaintiff's assertion of its non-federal claims against Heinsheimer in this action. The sole reason given in urging such a dismissal is lack of jurisdiction in this court to determine these claims. In support of its motion, Heinsheimer notes that the Commonwealth of Pennsylvania is the principal place of business of both Peerless and Heinsheimer, and further asserts that a Memorandum Opinion in this case dated April 2, 1968, which granted Heinsheimer's motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 determined that the plaintiff had no federal cause of action. Heinsheimer relies on this as establishing the plaintiff does not presently state a federal claim against it.

■ After a review of the record we conclude that the Memorandum Opinion of April 2, 1968, D. C., 283 F.Supp. 288, does not control the instant motions. The motion for summary judgment de-

---

1. In the affidavit of Dr. Charles E. Neel of Runnemede, New Jersey, the affiant avers receipt of a telephone call from one W. E. Bierer, who identified himself as a Weber employee, and who suggested that Dr. Neel contact Heinsheimer to have the order initially placed with Peerless on December 15, 1966, filled. According to Dr. Neel, within an hour of his conversation with Bierer, he was contacted at his office by one Kurt E. Weil who identified himself as a Heinsheimer salesman, repeated the substance of Bierer's conversation with the doctor and offered to fill the order Neel had placed with Peerless at the previous year's prices.

A similar set of occurrences is related by Dr. Gerald Jacobson whose affidavit avers that having placed an order for certain equipment with Peerless on December 22, 1966, and having made repeated requests of Weber that the ordered equipment be shipped, initiated telephone calls to Weber at Canton, Ohio, and spoke with a person identifying himself as Robert C. Hodgson, controller for Weber, who advised him to place his order through another distributor. If Dr. Jacobson were to follow this course, it was promised that he would receive last year's prices on the ordered equipment.

cided by that Opinion dealt with the initial complaint. The Court in granting that motion stated:

> "Merely the substitution by a manufacturer of one exclusive distributor for a rival distributor even at the instigation of the replacing dealer, is not a combination in restraint of trade under the Sherman Antitrust Act".

On April 26, 1968, Peerless requested leave to amend its complaint to allege that Weber and Heinsheimer had engaged in a conspiracy in restraint of trade, and that Heinsheimer had libeled and slandered Peerless. Leave was granted to file such a complaint on May 27, 1968, and the Amended Complaint was filed on May 31, 1968. It contained detailed allegations of acts of the manufacturer and its new exclusive distributor tending to show that they had acted in concert to insure that the plaintiff's customers would shift their orders to Heinsheimer.

With regard to whether a federal cause of action has been stated against Heinsheimer, the present record read in a light most favorable to the plaintiff, may be summarized as follows: Weber and Heinsheimer engaged in a vertical combination or conspiracy to punish Peerless for a putative violation of a geographic restriction as to the customers to whom Peerless could sell Weber dental products. This took the form of a refusal by Weber to deal with Peerless while attempting to service Peerless' customers through a substitute, authorized and independent distributor.

■ We can not say at this time that Peerless has failed to state a substantial federal claim of conspiracy to restrain trade. While it long has been held that an individual seller's refusal to sell to a person is not unlawful under Section 1 of the Sherman Act, United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919), where the refusal to sell is accompanied by unlawful conduct or agreement, an individual seller's refusal to deal transgresses the Sherman Act. Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 625, 73 S.Ct. 872, 97 L.Ed. 1277 (1953). Exclusive dealerships have been upheld although other dealers in the same product were eliminated as a result of the institution of the exclusive dealership, product distribution system. Packard Motor Car Co. v. Webster Motor Car Co., 100 U.S. App.D.C. 161, 243 F.2d 418 (1957), cert. denied, 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 38, rehearing denied, 355 U.S. 900, 78 S.Ct. 259, 2 L.Ed.2d 197 (1957); Schwing Motor Co. v. Hudson Sales Corp., 138 F.Supp. 899 (D.C.Md.1956), aff'd 239 F.2d 176, (C.A.4, 1956), cert. denied, 355 U.S. 823, 78 S.Ct. 30, 2 L.Ed. 2d 38 (1957). But a different question is presented where the manufacturer utilizes its position to directly support a new exclusive distributor in capturing the customers previously serviced by the distributor's predecessor.

■ The competitive effects of the alleged course of conduct can not be reliably ascertained from the present record. Nor is there sufficient information to determine the relevant market, the availability of competing substitutes for Weber's products, or the manufacturer's position in the market. The record is bare with regard to the effects on competition resulting from the terms and conditions of sale imposed by Weber, and from the geographic restriction placed on the customers to whom an authorized dealer was permitted to sell. On the other hand, the record as a whole does indicate that Weber has engaged in practices which tend to restrict competition in the sale of its products, that it refused to fill any orders received from the plaintiff and that Weber and Heinsheimer worked in tandem to replace Peerless in providing dental equipment and supplies. For purposes of the motion under consideration we therefore conclude that Peerless has presented *prima facie* a substantial federal claim

that Heinsheimer participated in a conspiracy the purpose of which was the restraint of trade.

 Federal courts have jurisdiction to decide non-federal claims in two instances: (1) when the parties and the subject matter of the litigation fulfill the requirements for diversity jurisdiction, See, Title 28 U.S.C. § 1332,[2] and (2) when the court acts under the concept of "ancillary" jurisdiction.[3]

One aspect of this concept is the doctrine of pendant jurisdiction which deals with plaintiff's joinder of multiple claims, one of which is within the jurisdiction of the federal court while the others lack any independent ground of federal jurisdiction. The district court's authority to decide pendant claims was defined in United Mine Workers of America v. Gibbs, 383 U.S. 715 at 725, 86 S.Ct. 1130 at 1138, 16 L.Ed.2d 218 (1965):

> "Pendant jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made or which shall be made, under their Authority * * *,' U. S. Const., Art. III § 2, and the relationship between that and the state claim permits the conclusion that the entire action before the *court* comprises but one constitutional 'case'. The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062. The state and federal claims must derive from a common nucleus of operative fact. But

if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in the federal courts to hear the whole."

In the ensuing paragraph the Court provided guidance for application of the doctrine of pendant jurisdiction:

> "That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendant jurisdiction is a doctrine of discretion not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to the litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in the jurisdictional sense, the state claims should be dismissed as well. Similarly if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. * * * Finally, there

---

**2.** Peerless and Heinsheimer are corporations having their principal places of business in Pennsylvania. Therefore, with respect to these parties, there is no diversity.

**3.** Ancillary jurisdiction is a general concept holding that a district court "acquires jurisdiction over a case or controversy as an entirety, and hence may, as an incident to disposition of a matter properly before it, possess jurisdiction to decide other matters raised by the case of which it could not take cognizance were they independently presented." 1 Barron and Holtzoff, Federal Practice and Procedure (Wright Ed.) § 23.

**336**

may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial. Fed.Rule Civ.Proc. 42(b). If so, jurisdiction should ordinarily be refused. United Mine Workers of America v. Gibbs, supra, at 726–727, 86 S.Ct. at 1139. (Footnotes omitted).

■ The motion under consideration seeks to bar claims against Heinsheimer for tortious interference with customer relationships, libel and slander. The acts on which these claims are based are the very same acts providing the basis for the federal claim of engaging in a conspiracy to restrain trade. Under these circumstances it is appropriate that all claims be tried in a single judicial proceeding. No reason has been called to this court's attention why this manner of proceeding would not be productive of "judicial economy, convenience and fairness to the litigants." Nor has any other reason been advanced to show why all of these claims should not be disposed of in this suit. We therefore conclude that Heinsheimer's motion to dismiss is denied.

■ In its Memorandum Contra Defendant Heinsheimer's Motion to Dismiss, filed June 13, 1968, the plaintiff requests that it be allowed a counsel fee of $250.00 payable by Heinsheimer on the ground that this motion is repetitious of earlier motions filed and decided in this case. The repetitive matter complained of is defendant's utilization of the fact there is no diversity of citizenship between Peerless and Heinsheimer as an argument for the motion to dismiss. Since this motion is decided under the Amended Complaint rather than the initial complaint, it is not repetitious of the earlier motions. We therefore conclude that the plaintiff's request that Heinsheimer be compelled to reimburse the counsel fee incurred with regard to this motion is denied.