ALLES CORPORATION, Plaintiff-Appellant,

v.

SENCO PRODUCTS, INC., Defendant-Appellee.

No. 15197.

United States Court of Appeals
Sixth Circuit.

March 30, 1964.

---

William T. Bahlman, Jr., Cincinnati, Ohio, for appellant; Paxton & Seasongood, David W. Goldman, Cincinnati, Ohio, on brief.

Richard W. Barrett, Cincinnati, Ohio, for appellee; Powell McHenry, Robert T. McConaughy, Thomas S. Calder, Dinsmore, Shohl, Barrett, Coates & Deupree, Cincinnati, Ohio, on brief; Ireton, Elder, Wilson & Gordon, Cincinnati, Ohio, of counsel.

Before MILLER, CECIL and O'SULLIVAN, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

This action was filed in the District Court by the plaintiff, Alles Corporation (hereinafter referred to as Alles), seeking treble damages in the amount of $330,000.00 and an injunction for alleged violations by the defendant, Senco Products Inc., (hereinafter referred to as Senco) of Section 2 of the Sherman Anti-Trust Act and of Section 3 of the Clayton Act. The District Judge sustained Senco's motion to dismiss the complaint for failure to state a claim upon which relief could be granted, with leave to Alles to file an amended complaint. Upon failure of Alles to amend its complaint, an order was entered dismissing the action with prejudice, from which order this appeal was taken.

The allegations of the complaint are as follows. Alles is a distributor of stapling machines, staples and supplies in the New England area of the United States. Senco is engaged in the manufacturing and sale of air staplers and staples throughout the United States and distributes and sells its products to ultimate consumers through distributors such as Alles. Alles' agreement with Senco for distribution and sale of its products was an oral one until December 7, 1956. On that date a written agreement was signed by the parties in which Alles was appointed an exclusive distributor of Senco light-duty air staplers and parts and accessories therefor in certain designated New England states. The written agreement provided that Alles was to maintain an adequate inventory of Senco products at all times and that Alles should not sell or attempt to sell any of Senco products in any territory other than the one assigned to Alles in the agreement. Said agreement was terminable by either party upon sixty days written notice. The complaint alleges that an implied term of the agreement was that Alles would not handle staplers and staples manufactured and sold by anyone other than Senco. Senco is one of the two largest manufacturers of light-duty air staplers, and its sales thereof account for approximately one-half of all such staplers sold in the United States. The annual sales volume of this stapler market is approximately $16 million.

In the latter part of 1958 Alles Southeast Corporation, an affiliate of Alles, which had no agreement with Senco, began selling in Georgia light-duty air staplers produced by a manufacturer other than Senco. Senco advised Alles that if its affiliate did not stop selling the competing staplers, it would cancel Alles distributorship. Alles refused to comply with this demand, and on February 27, 1959, Senco wrote Alles that its distributorship agreement for the New England area was being terminated and canceled as of May 2, 1959, and it was so terminated and canceled.

While Alles was a distributor of Senco's products it invested substantial sums

of money in Senco's staplers and staples and parts and accessories therefor and also expended considerable money in the creation and growth of a sales and service organization so that it could render first-class service to its customers who purchased Senco products. Said investment and expense amounted to approximately $100,000.00. Alles also built up a large amount of good will for both itself and Senco with its customers to which it sold Senco's products.

The complaint also alleges that the distributorship agreement between Alles and Senco "which is substantially similar to other agreements which defendant has with its various distributors throughout the United States" and defendant's conduct with respect to the activities of Alles Southeast Corporation constitute a monopoly or an attempt to monopolize interstate commerce in the production and distribution of light-duty air staplers, in violation of Section 2 of the Sherman Act, and that such conduct and particularly Senco's agreements with its distributors are in violation of Section 3 of the Clayton Act "in that their effect may be to substantially lessen competition or to tend to create a monopoly in the aforesaid line of commerce." As a result of Senco's cancellation of the distributorship agreement and its other conduct since May 2, 1959, Alles has been unable to purchase any air staples manufactured by Senco and parts and accessories therefor, and has been unable to supply materials and parts for staplers of customers with whom it dealt while a distributor for Senco, which customers have been forced to cease doing business with Alles and to turn elsewhere for parts and service requirements of their air staplers originally purchased from Alles. Senco's conduct and exclusive distributorship agreements, if permitted to continue, will result in Senco achieving a more dominant position than it now has in the manufacture and distribution of light-duty air staplers in the United States, commerce in the production and distribution of light-duty air staplers "may be substantially restrained and show a tendency to monopolize, and competition in said line of commerce may be substantially lessened."

We will direct our attention first to the alleged violation of Section 3 of the Clayton Act, Section 14, Title 15 United States Code. It provides as follows:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, * * * for use, consumption, or resale within the United States * * * on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, * * * of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

It is clear that the contract in question violates this section of the statute if, as provided by the closing qualifying clause, the effect of the contract "may be to substantially lessen competition or tend to create a monopoly in any line of commerce." It becomes necessary, therefore, to see how that clause has been construed by the Supreme Court.

In Standard Fashion Company v. Magrane-Houston Company, 258 U.S. 346, 42 S.Ct. 360, 66 L.Ed. 653, it was said that the statute condemned sales or agreements where the effect would under the circumstances disclosed probably lessen competition or create an actual tendency to monopoly; that this was not to say that the act was intended to reach every remote lessening of competition, but rather only those which were substantial.

In International Salt Co. v. United States, 332 U.S. 392, 396, 68 S.Ct. 12, 92 L.Ed. 20, it was held, at least in tying cases, that the necessity of direct proof of the economic impact of such a contract

was not necessary where it was established that the volume of business affected was not insignificant or insubstantial and that the effect was to foreclose competitors from any substantial market.

In Standard Oil Co. of Cal. and Standard Stations v. United States, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371, the Court held that so-called "requirement contracts" which provided for exclusive supplies to a purchaser were proscribed by Section 3 of the Clayton Act if their practical effect was to prevent lessees or purchasers from using or dealing in the goods of a competitor, with the result that competition has been foreclosed in a substantial share of the line of commerce affected. In that case the contracts affected a gross business of $58,-000,000.00, comprising 6.7% of the total in a seven state area in which the company sold its products. The Court stated that the company's use of the contracts created just such a potential clog on competition as it was the purpose of Section 3 to remove wherever, were it to become actual, it would impede a substantial amount of competitive activity.

■ For the purposes of our present ruling we think it is immaterial that the written contract does not expressly provide that Alles would not handle staplers and staples manufactured and sold by anyone other than Senco. The complaint alleges that such was an implied term of the agreement. In considering the motion to dismiss we accept that allegation. If appellee considers it as an issue in the case, a hearing would be necessary to determine that issue, which necessarily is a bar to the motion to dismiss.

■ The complaint alleges that the annual sales volume of the stapler market is approximately $16,000,000.00, that Senco is one of the two largest manufacturers of light-duty air staplers and its sales thereof account for approximately one-half of all such staplers sold in the United States, and that the effect of the exclusive distributor agreement "may be to substantially lessen competition or to tend to create a monopoly in any [the aforesaid] line of commerce."

We are of the opinion that the complaint states a cause of action under Section 3 of the Clayton Act. It may be that in the trial of this action the evidence will not sustain the allegation that the effect of the exclusive distributor agreement "may be to substantially lessen competition or to tend to create a monopoly" as required by the statute. That remains to be seen. For the present, the complaint alleges that such will be the effect, which we believe states a cause of action under the wording of the statute.

This Court has previously considered this same question under a similar contractual arrangement between a manufacturer and a distributor and reversed the judgment of the District Court sustaining a motion to dismiss the complaint. Englander Motors, Inc. v. Ford Motor Co., 267 F.2d 11, C.A. 6th. The District Judge recognized that the ruling in that case was controlling in this case, unless there was a material factual difference in the contractual relationship between the manufacturer and the distributor in the present case. In the Englander Motors case the contract gave the manufacturer the right to cancel the franchise upon 60 days notice. In the present case the franchise agreement was terminable *by either party* upon 60 days written notice. The District Judge was of the opinion that since the distributor in the present case, as well as the manufacturer, had a right to cancel the franchise, it therefore had the privilege of offering for sale the goods of any competitive supplier, except within the next 60 days, thus preventing the manufacturer from using the contract for the purpose of creating a monopoly in this particular line of commerce.

Strictly speaking, that is correct. But actually, cancellation of the franchise by the distributor will rarely occur. The continued existence of the franchise is essential to the success of the distributor's business. The right of the distrib-

utor to cancel a profitable and desirable distributorship is actually of no value, in that it is essentially the right to destroy its own business. As a practical matter, the distributor is more concerned with the success of its own business than it is with the effect which the exclusive distributorship has on the competitors of the manufacturers. It cannot be expected that a distributor will deliberately destroy its own business in order to protect the competitor of the manufacturer, a stranger in the field, to whom no duty is owed.

Assuming that the right to cancel may happen occasionally, we believe that it is much more probable that the distributor will not cancel the franchise but will continue to carry out its provisions with the monopolistic effect declared illegal by the statute. In this connection it will be noticed that the statute making an exclusive distributorship illegal is not limited to those agreements, the effect of which is *without question* to substantially lessen competition, but it also includes those agreements which "may" have that result. Since the distributor may in many cases not exercise its right to cancel, the exclusive distributorship agreement "may" have the result proscribed by the statute.

We are of the opinion that there is no material factual difference between the present case and the Englander Motors case and that the ruling in that case is controlling.

In sustaining the motion to dismiss, the District Judge did not discuss whether the complaint stated a cause of action under Section 2 of the Sherman Act, Section 2, Title 15 United States Code. This was probably because of the statement in Tampa Electric Co. v. Nashville Coal Co., 365 U.S. 320, at page 335, 81 S.Ct. 623, at page 632, 5 L.Ed.2d 580, that if the contract does not fall within the broader proscription of Section 3 of the Clayton Act, it follows that it is not forbidden by Sections 1 and 2 of the Sherman Act. Since we have held that the complaint states a cause of action under Section 3 of the Clayton Act, the statement in the Tampa Electric Co. case is not now applicable.

Section 2 of the Sherman Act provides "Every person who shall monopolize, or attempt to monopolize * * * any part of the trade or commerce among the several states, * * * shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine * * * or by imprisonment * * * or by both said punishments, in the discretion of the court."

The complaint alleges that the contract in the present case, which is substantially similar to other agreements which defendant has with its various distributors throughout the United States, and the defendant's conduct with respect to the activities of Alles Southeast Corporation "constitute a monopoly in or an attempt to monopolize interstate and foreign commerce in the production and distribution of light-duty air tackers in violation of Section 2 of the Sherman Act."

We are of the opinion that these allegations state a cause of action under Section 2 of the Sherman Act. Whether, in fact, defendant's conduct actually constitutes a monopoly or an attempt to monopolize interstate commerce in this product will depend upon the evidence. At this point we accept the allegation. Accordingly, we find it unnecessary to review the numerous cases referred to by counsel which discuss whether the particular facts involved in the case under consideration constituted a violation of the Sherman Act.

In view of the emphasis placed by the District Judge upon the cancellation privilege on the part of the distributor, it should be pointed out that a contractual restraint is not necessary under Section 2 of the Sherman Act, that the act may be violated by a single defendant, and that it is not necessary to show that success rewarded a defendant's attempt to monopolize. Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162.

As was stated in Swift and Company v. United States, 196 U.S. 375, 396, 25 S.Ct. 276, 49 L.Ed. 518, where acts are not sufficient in themselves to constitute a monopoly but require further acts in addition to the mere forces of nature to bring that result to pass, an intent to bring it to pass is necessary in order to produce a dangerous probability that it will happen. The purpose or intent to create or maintain a monopoly transforms what might otherwise be a legal method of doing business into an illegal method under Section 2 of the Sherman Act. Lorain Journal Co. v. United States, supra, 342 U.S. 143, 155, 72 S.Ct. 181, 96 L.Ed. 162. It is clear from recent decisions of the Supreme Court that although summary judgments have a place in the antitrust field, they are not appropriate "Where motive and intent play leading roles." Poller v. Columbia Broadcasting System, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458; White Motor Co. v. United States, 372 U.S. 253, 259, 83 S.Ct. 696, 9 L.Ed.2d 738. See also: Board of Trade of City of Chicago v. United States, 246 U.S. 231, 238, 38 S.Ct. 242, 62 L.Ed. 683, where the Court pointed out the necessity of considering the facts peculiar to the business to which the restraint is applied, its condition before and after the restraint was imposed, the nature of the restraint, and its effect actual or probable.

Appellee is to some extent critical of the language of the complaint, although apparently the point is not seriously pressed. We think the criticism is answered by the recent statement of the Supreme Court in Foman v. Davis, 371 U.S. 178, 181, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, that "It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities."

The judgment is reversed and the case remanded to the District Court for further proceedings not inconsistent with the views expressed herein.