STOKES EQUIPMENT COMPANY, Inc.,
et al., Plaintiffs,

v.

OTIS ELEVATOR COMPANY et al.,
Defendants.

Civ. A. No. 71–61.

United States District Court,
E. D. Pennsylvania.

March 23, 1972.

Henry Kolowrat, Philadelphia, Pa., for plaintiffs.

Richard Bazelon, Philadelphia, Pa., for Otis Elevator Co.

Benjamin M. Quigg, Jr., Philadelphia, Pa., for Keystone Material Handling, Inc.

## MEMORANDUM AND ORDER

DITTER, District Judge.

This case comes before the court on a motion for judgment on the pleadings as to those counts of a complaint which charge violations of the antitrust laws.

For many years, Stokes Equipment Company, Inc., was a distributor of light industrial lift trucks manufactured by the defendant, Moto-Truc Co., which was acquired by the defendant, Otis Elevator Company, in January, 1967. Thereafter, Otis embarked on a program to require some of its dealers, including Stokes, to handle another machine produced by Otis, the Baker lift truck. As compared with the Moto-Truc line, the Baker truck is designed for heavier use and Stokes considered it to be a less saleable, less desirable item to handle. Stokes was reluctant to become a distributor of Baker trucks, but after Otis promised marketing assistance and the extension of credit, Stokes became interested in taking on the Baker line. The ultimate decision to do so or not was left up to Stokes. Having determined to promote Baker trucks, Stokes made provision to improve its facilities in accordance with requirements imposed by Otis. While the changes were in progress, Stokes' franchise was cancelled and awarded to the defendant, Keystone Material Handling, Inc., Keystone agreeing to push the Baker line in return for being awarded the Moto-Truc franchise and Otis' agreeing not to deal further with Stokes. Stokes, and the individual plaintiffs who were all employed by Stokes, contend they were damaged by Otis' agreement with Keystone and thus brought the present suit.

Count I of the complaint alleges the agreements, understandings, and ar-rangements between Otis, Moto-Truc, and Keystone constituted violations of Section 3 of the Clayton Act and Section 1 of the Sherman Act. Count II alleges violations of Section 7 of the Clayton Act. The remaining counts of the complaint are not affected by the present motion.

## COUNT I

The allegations of Count I are insufficient to constitute a violation of either Section 3 of the Clayton Act or Section 1 of the Sherman Act.

■ In essence, Section 3 of the Clayton Act prohibits leases, sales or contracts for the sale of goods made on the condition, agreement, or understanding that the purchaser will not use or deal in the goods of the seller's competitors where the effect may be to lessen competition substantially or tend to create a monopoly. This section, like others of the Clayton Act, was intended to reach specific conduct which had been held by the courts to be outside the ambit of the Sherman Act and which Congress felt must be proscribed in order to promote competition. The gravamen of a Section 3 violation is the forbidden condition, agreement, or understanding which stifles competition by excluding a competitor's product. A proper pleading should assert this ultimate fact. McElhenney Co., Inc. v. Western Auto Supply Company, 269 F.2d 332, 337, 338 (4th Cir. 1959).

■ At most, Count I sets forth that Otis wanted Stokes to sell the Baker truck, Stokes was reluctant to do so, Otis offered inducements to Stokes, Stokes agreed, and then Otis decided to deal with Keystone instead of Stokes. There is no allegation that there was any lease, sale, or contract of sale between Otis and Stokes or that any agreement which was discussed was to be conditioned upon Stokes' not handling some product which would compete with those sold by Otis. It is not contended that Stokes' franchise was awarded to Keystone on condition that it would not

handle items that could compete with those produced by Otis. There is no showing or allegation that competition would be lessened or that there would be a tendency to create a monopoly by anything which any of the defendants did or wanted Stokes to do.

Although plaintiffs maintain they have alleged efforts on the part of the defendants to promote "tie-in" sales, which are illegal, Count I really does no more than assert that Otis was trying to have its dealers handle the full line of Otis industrial lift trucks. The mere allegation that a seller wanted its distributors to handle all of its products does not describe illegal conduct: McElhenney Co., Inc. v. Western Auto Supply Company, supra, 338.

■ A tying arrangement has been defined as an agreement by a party to sell a product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier. Where such conditions are successfully exacted, competition on the merits with respect to the tied product is inevitably curbed in two ways. First, the buyer is prevented from seeking alternative sources of supply for the tied product, and second, competing suppliers of the tied product are foreclosed from that part of the market which is subject to the tying arrangement. For these reasons, tying agreements are considered unreasonable in and of themselves if a party has sufficient economic power with respect to the tying product to restrain free competition appreciably in the market for the tied product and a not insubstantial amount of interstate commerce is affected. Sufficient economic power may be inferred from the tying product's desirability or from the uniqueness of its attributes. Therefore, given the requisite economic power and effect upon commerce, tying agreements are illegal except where justified by special circumstances or conditions: Lee National Corporation v. Atlantic Richfield Company, 308 F.Supp. 1041 (E.D.Pa.1970).

■ Here, however, the plaintiffs have neither alleged the monopolistic position, market dominance, economic power, consumer demand, or product uniqueness to which the cases refer,[1] nor have they alleged there has been any effect upon interstate commerce as a result of what Otis did. They have not charged that the continuance of Stokes' franchise was conditioned upon its handling of the Baker truck or the exclusion of competing lines. Plaintiffs have not averred Stokes lost its distributorship because of its refusal to accede to demands made by Otis which would have prevented their handling of lift trucks produced by other manufacturers. In short, plaintiffs have not alleged facts which would describe an illegal tying arrangement, an attempt to create such an arrangement, the ability of Otis to do so, or any adverse competitive consequences that have resulted.

■ Relying on Peerless Dental Supply Co. v. Weber Dental Manufacturing Company, 299 F.Supp. 331 (E.D.Pa. 1969), plaintiffs contend their assertions in paragraph 18 of the complaint are sufficient to sustain Count I. This paragraph states: "In effectuating the replacement of Stokes by Keystone, Otis, Moto-Truc and Keystone acted in concert to insure that Stokes' customers would shift their orders to Keystone." I disagree. In *Peerless*, the manufacturer and its new dealer were alleged to have libeled and slandered the plaintiff, a former distributor, to have made false representations about plaintiff, and to have interfered tortiously with plaintiff's relationships with its customers. The allegations in the instant matter

1. Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 608–09, 73 S.Ct. 872, 880, 97 L.Ed. 1277 (1953) ; Northern Pacific Railway Co. v. United States, 356 U.S. 1, 5–6, 78 S.Ct. 514, 518–19, 2 L.Ed.2d 545 (1958) ; United States v. Loews, Inc., 371 U.S. 38, 45, 83 S.Ct. 97, 102, 9 L.Ed.2d 11 (1962).

fall far short of those in *Peerless* and do not allege illegal conduct.

▇ Plaintiffs also contend that defendants violated Section 1 of the Sherman Act which prohibits contracts, combinations, or conspiracies in restraint of trade. However, plaintiffs have not described any conduct by defendants which amounts to such trade restraint. For example, there is no contention that Otis tried to prevent Stokes from selling lift trucks, but merely that the exclusive franchise once held by Stokes was awarded to Keystone. This is not enough. Plaintiffs' allegations are similar to those in Joseph E. Seagram and Sons, Inc. v. Hawaiian Oke and Liquors, Ltd., 416 F.2d 71 (9th Cir. 1969), cert. denied 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970), rehearing denied, 397 U.S. 1003, 90 S.Ct. 1113, 25 L.Ed.2d 415 (1970), and Kirihara v. Bendix Corporation, 306 F.Supp. 72 (D.Hawaii 1969). In these two cases a switching from one exclusive dealer to another was held not to amount to a violation of the antitrust laws despite consequent loss of customers and business to the former distributor.

▇ Moreover, since plaintiffs failed to make out a cause of action under the Clayton Act, they have also failed to do so under the narrower Sherman Act. In Tampa Electric Co. v. Nashville Coal Co., 365 U.S. 320, 335, 81 S.Ct. 623, 632, 5 L.Ed.2d 580 (1961), the Supreme Court stated, "We need not discuss the respondents' further contention that the contract also violates section 1 and section 2 of the Sherman Act, for if it does not fall within the broader proscription of section 3 of the Clayton Act it follows that it is not forbidden by those of the former."

Count I must be dismissed because plaintiff has not set forth a claim under either Section 3 of the Clayton Act or Section 1 of the Sherman Act.

## COUNT II

In Count II of their complaint, plaintiffs charge that Otis violated Section 7 of the Clayton Act by its acquisition of Moto-Truc and is therefore responsible to them for treble damages under Section 4 of the Act. To the facts pleaded in the first count, plaintiffs add the assertions that through its merger with Moto-Truc, Otis obtained one of the four largest manufacturers of narrow aisle lift trucks, a separate line of commerce. It is then averred that one of the purposes and effects of the acquisition was to force Moto-Truc dealers to sell the Baker truck and to cut off those dealers which did not fit into Otis' plans for a consolidated sales program. Had Otis not purchased Moto-Truc, plaintiffs contend that Stokes would have remained as a Moto-Truc dealer.

Section 7 of the Clayton Act, 15 U.S. C. § 18, prohibits corporate acquisition of the stock or assets of another corporation where the effect may be substantially to lessen competition, or to tend to create a monopoly. Section 4 of the Act, 15 U.S.C. § 15, provides that any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws shall recover treble damages.

▇ The statutory requirement that suits be based on injuries which occur "by reason of" antitrust violations expressly restricts the right to sue for treble damages. There must be sufficient causal connection to establish that the violation was a "material cause" of or a "substantial factor" in the occurrence of damage. There must be harm to a plaintiff whose interests Congress intended to protect. While any antitrust violation disrupts the competitive economy to some extent and creates foreseeable ripples of injury which may be shown to reach individual employees, stockholders, or consumers, not all of these have the requisite standing to sue for treble damages. Consequently, a plaintiff must allege a causitive chain to his injury which is direct rather than incidental, or which indicates his business or property was within the target area of the defendant's illegal act: Billy Baxter,

Inc. v. Coca-Cola Company, 431 F.2d 183, 187 (2nd Cir. 1970).

Here it is clear that Stokes was not within the ambit of those whom Congress intended to protect by Section 7. Assuming that Otis' acquisition of Moto-Truc did violate this section, it would only do so because of a probable lessening of competition in the manufacture of lift trucks. A competing manufacturer might therefore have the right to bring a private action against Otis. It does not follow that all or any of these plaintiffs have a similar right. The joinder of Moto-Truc and Otis was not a material cause or a substantial factor in the damages which plaintiffs allege. There is no direct relationship between the acquisition and the injury. Rather, it was an incidental matter which the merger may have made possible but which it did not cause. All plaintiffs really allege is that because of the merger, Stokes was replaced by Keystone. This is insufficient to make out a case under Section 7, which is concerned with competition, not competitors: Brown Shoe Company v. United States, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962).

Although plaintiffs aver the Otis, Moto-Truc merger was illegal, they fail to set forth in what way Section 7 was violated. For example, they do not allege that prior to the merger there was any competition between Otis and Moto-Truc. Quite to the contrary, the complaint makes it clear that before 1967 Otis produced Baker trucks, a counterbalanced type with a capacity to 10,000 pounds and York trucks, a large, counter-balanced machine with a capacity to 50,000 pounds. Moto-Truc, on the other hand, manufactured narrow aisle lift trucks, which the complaint refers to as "a separate line of commerce."

Plaintiffs allege a merger, but not all mergers are illegal. In fact, as it is pointed out in Brown Shoe Company v. United States, supra, the joining of two small companies may promote competition by improving their position in the market place and their ability to sell their products.

There is no allegation that the acquisition of Moto-Truc by Otis lessened competition or tended to create a monopoly. It would hardly follow that because Stokes which sold one line of trucks was replaced by Keystone which sells two lines that fewer lift trucks are available to prospective purchasers. Although plaintiffs complain that one of the effects of the merger was to eliminate certain former Moto-Truc distributors, there is no averment that there are now fewer lift truck dealers or that Stokes has been foreclosed from continuing in this type of business.

Having failed to aver any lessening of competition in the manufacture or sale of lift trucks, any direct injury caused by the Otis, Moto-Truc merger, and any facts to show they were in the target area of the Clayton Act, plaintiffs have failed to state a valid cause of action in Count II.

## CONCLUSION

Although Counts I and II of the complaint must be dismissed for failure to state a claim for which relief can be granted, facts may exist which could support both of these causes of action. Antitrust litigation should not be disposed of without giving plaintiffs a full opportunity to formulate their charges: Radovich v. National Football League, 352 U.S. 445, 77 S.Ct. 390, 1 L. Ed.2d 456 (1957). Therefore, plaintiffs will be granted twenty (20) days from the day of the filing of the following order to amend their complaint if they so desire. If there is no amendment within that period, the dismissal will be final and with prejudice.