**ELLIOTT & FRANTZ, INC.**

**v.**

**RAYGO INC.**

**Civ. A. No. 71–339.**

United States District Court,
E. D. Pennsylvania.

June 14, 1974.

---

Herman J. Obert, Philadelphia, Pa., for plaintiff.

Richard P. McElroy, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

Plaintiff, Elliott & Frantz, Inc. (hereinafter referred to as E & F), brought this action against the defendant, RayGo Inc. (hereinafter referred to as RayGo) for damages claimed to have been sustained as a result of RayGo's alleged violations of Section 3 of the Clayton Act, 15 U.S.C. § 14, and Section 2 of the Sherman Act, 15 U.S.C. § 2.

Presently before the Court is the Motion of the defendant, RayGo, for summary judgment pursuant to rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C.

## BACKGROUND

RayGo is a Minnesota corporation which manufactures and sells heavy-duty construction equipment.[1] This equipment consists of self-propelled vibratory rollers and compactors which are used in the construction of highways, airports, dams, and similar projects. RayGo markets this equipment through independent distributors located throughout the country. The plaintiff, E & F, is one such independent distributor.

On June 9, 1966, the parties entered into a written distributor agreement.[2] Paragraph 4 of the distributor agreement provides as follows:

> In consideration of the rights granted in paragraph 1 of this Agreement, Distributor agrees not to sell or offer for sale in the territory covered by this Agreement equipment competitive to that manufactured by the Company.[3]

A conflict arose between the parties in late 1970, and shortly thereafter RayGo terminated the distributor agreement. It is the nature of this conflict and the circumstances surrounding the termination which form the basis for the present action.

## CONTENTIONS

E & F contend that in 1970 RayGo sought to enforce paragraph 4 of the distributor agreement (hereinafter referred to as paragraph 4) and that such enforcement constituted a violation of the antitrust laws.[4] E & F submits that

---

1. Complaint, paragraph 3.

2. The parties also entered into another such agreement on February 20, 1970, for continuance and accomplishment of the original purpose. *See*, Complaint, paragraph 8.

3. *See*, Exhibit P-2 attached to plaintiff's Memorandum in opposition to defendant's

Motion for Summary Judgment. (Hereinafter referred to as plaintiff's Memorandum).

4. Plaintiff's Memorandum at page 16, where it is stated:

> "It is only RayGo's belated enforcement of the illegal provisions of Paragraph 4 of the Distributor Agreement—which was in

the reason for the belated enforcement was that for the first time (in the fall of 1970) it was handling heavy-duty equipment which was in fact competitive with equipment manufactured by RayGo;[5] that when RayGo became aware of this fact, it sought to enforce paragraph 4; and that when threats of enforcement failed, termination followed.[6]

The defendant, RayGo, denies attempted enforcement of paragraph 4;[7] however, it contends even assuming *arguendo* attempted enforcement, a manufacturer who refuses to deal with a distributor because the distributor promotes and sells competitive goods is clearly within his rights and such refusal does not run afoul of Section 3 of the Clayton Act.[8] RayGo further contends that where a claim does not fall within Section 3 of the Clayton Act, it follows that it cannot fall within the more narrow proscription of Section 2 of the Sherman Act.[9] In addition, RayGo contends that E & F has failed to state a claim under Section 2 of the Sherman Act because the Complaint fails to allege the relevant market; it fails to allege the activity monopolized; and it fails to allege defendant's control of the market.[10]

## DISCUSSION

True it is that summary judgment is not favored in antitrust cases. Semke v. Enid Auto Dealers Ass'n, 456 F.2d 1361, 1371 (10th Cir. 1972). Rule 56(c) of the Fed.Rules Civ.Procedure mandates that summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We note that this rule authorizes summary judgment:

"only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try."[11]

Mindful of these precepts, we turn to the case at bar.

Section 3 of the Clayton Act, 15 U.S. C. § 14 provides:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or

a dormant and incipient state for many years—that a violation of Section 3 of the Clayton Act was precipitated by RayGo terminating the Distributor Agreement."

5. Plaintiff's Memorandum at page 15. *See*, also transcript of proceedings of March 8, 1974 upon argument of counsel on defendant's Motion for Summary Judgment at pages 28, 31. (Hereinafter referred to as transcript).

6. Complaint, paragraphs 11, 12, 13, 15, 16. *See*, also defendant's Memorandum in support of its Motion for Summary Judgment

at page 4. (Hereinafter referred to as defendant's Memorandum).

7. Answer paragraph 15.

8. Defendant's Memorandum at page 11.

9. Defendant's Memorandum at page 24.

10. Defendant's Memorandum at page 23.

11. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1961), quoting with approval from Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944).

seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

Thus,

"in essence, Section 3 of the Clayton Act prohibits leases, sales or contracts for the sale of goods made on the condition, agreement, or understanding that the purchaser will not use or deal in the goods of the seller's competitors where the effect may be to lessen competition substantially or tend to create a monopoly." [12]

The gravamen of a Section 3 violation is that the lease, sale, or contract for sale of goods be conditioned on an exclusionary provision. A proper pleading would aver these facts.

 Such an exclusionary provision is clearly present in paragraph 4 of the distributor agreement. More, however, is needed to establish a cause of action under Section 3. Specifically, plaintiff must also aver that there were leases, sales, or contracts for the sale of goods conditioned on this exclusionary provision. E & F's Complaint fails to make such an averment. RayGo volunteers that the reason for this omission is that paragraph 4 was given no effect by the parties; that, in fact, E & F did lease, sell or contract for sale equipment which was competitive with that manufactured by RayGo; and that, therefore, there were no leases, sales, or contracts for sale of equipment conditioned on the exclusionary provision.[13] This contention would, of course, present an issue of material fact for the jury. To the contrary, however, E & F contends that at the time the agreement was executed there probably was no other competing product on the market whatsoever.[14] To support this contention, E & F submits that paragraph 4 was in a dormant or incipient state until Buffalo-Springfield manufactured equipment competitive with RayGo equipment and that when RayGo was informed that E & F was handling the Buffalo-Springfield line, RayGo sought enforcement of paragraph 4.[15] The plaintiff does not advance its cause to so argue. Certainly, if there were no competing product on the market, paragraph 4 would be inconsequential. It follows that if paragraph 4 were in a dormant or incipient state there could not have been a lease, sale, or contract for sale of goods subject to it.

 If all the Complaint alleges is that RayGo refused to deal with E & F and terminated the distributor agreement because E & F would not confine its dealings to the equipment manufactured by RayGo, then the Complaint must be dismissed. The law on this point is well settled and the cases are legion.[16] A mere refusal by a

---

12. Stokes Equipment v. Otis Elevator Co., 340 F.Supp. 937, 939, (E.D.Pa.1972).

13. RayGo contends that paragraph 9 of plaintiff's Complaint confirms this proposition. Because of its significance we quote paragraph 9 in its entirety:
"At the time defendant first appointed plaintiff its distributor as aforesaid, defendant did so with knowledge and full awareness that plaintiff then was an authorized distributor for one or more other leading manufacturers of construction equipment, parts and accessories, including machines for excavation, moving, compaction and grading of earth and other material, and those later distributor arrangements were neither disturbed nor intended to be disturbed or disrupted by the Distrubutor Agreement from defendant to plaintiff, the said Distributor Agreement being granted by defendant for a business arrangement which the parties thereto accepted as compatible with plaintiff's other existing distributorship arrangements and without impairing any of such existing arrangements."

14. Transcript at page 30.

15. Plaintiff's Memorandum at page 16.

16. FTC v. Curtis Publishing Co., 260 U.S. 568, 43 S.Ct. 210, 67 L.Ed. 408 (1923); Timken Roller Bearing Co. v. FTC, 299 F. 2d 839 (6th Cir. 1962); Associated Beverages Co. v. P. Ballantine & Sons, 287 F.2d 261 (5th Cir. 1961); McElhenney Co. v. Western Auto Supply Co., 269 F.2d 332 (4th Cir. 1959); Leo J. Meyberg Co. v. Eureka Williams Corp., 215 F.2d 100 (9th Cir.

manufacturer to deal with a retailer who will not confine his dealings to the goods of the manufacturer does not run afoul of Section 3 of the Clayton Act.[17] The reason for this conclusion is obvious; a refusal to deal is by definition a refusal to enter into a sale or lease. The leading case on this point is McElhenney Co. v. Western Auto Supply Co.[18] There the plaintiffs were owners of retail outlet stores which sold merchandise manufactured by Western Auto. The plaintiffs alleged that Western Auto threatened to stop selling its products to them if they continued to handle goods in competition with Western Auto merchandise. When the retailers refused, Western Auto cancelled their contracts. The Court held that the plaintiffs had not stated a cause of action because there was no assertion that there had been a sale or lease on the "forbidden condition" of exclusivity.[19]

Similarly, in Stokes Equipment Co. v. Otis Elevator,[20] the plaintiff, a distributor of light industrial lift trucks manufactured by the defendant, alleged that the defendant had cancelled its franchise because the plaintiff was reluctant to "push" a certain line of trucks manufactured by the defendant.[21] The Court stated:

> "There is no allegation that there was any lease, sale, or contract of sale between Otis and Stokes or that any agreement which was discussed was to be conditioned upon Stokes' not handling some product which would compete with those sold by Otis." [22]

The Court ruled that unless the Complaint were so amended it would be dismissed.

A like result obtained in Nelson Radio & Supply Co. v. Motorola Inc.[23] In *Nel-son* the plaintiff retailer claimed that it was coerced into signing a franchise agreement with the defendant manufacturer by threats of termination of its existing distributor agreement. The Court acknowledged the "real difference between the act of refusing to deal and the execution of a contract which prevents a person from dealing with another." [24] Finding no evidence that there was a sale, or lease pursuant to the condition of exclusivity, the Court sustained the judgment of the lower court dismissing the Complaint.

Conversely, the plaintiff argues that the case of Alles Corporation v. Senco Products, 329 F.2d 567 (6th Cir. 1964), is controlling. There the plaintiff was a distributor of air staples manufactured by the defendant. A distributor agreement was entered into between the parties which provided, *inter alia*, that the plaintiff was to maintain an "adequate inventory" of defendant's air staples. In their Complaint plaintiff alleged that notwithstanding the contract terms there was in fact an implied condition in the agreement wherein plaintiff agreed not to handle air staples manufactured by anyone other than the defendant. Thereafter, defendant advised plaintiff that if it did not stop selling competing goods, it would cancel the distributorship. In reversing the District Court's dismissal of the Complaint for failure to state a claim upon which relief may be granted the Court stated:

> "It is clear that the contract in question violates this section of the statute if . . . the effect of the contract 'may be to substantially lessen competition or tend to create a monopoly in any line of commerce.' " [25]

1954) cert. denied 348 U.S. 875, 75 S.Ct. 113, 99 L.Ed. 689 (1954) ; Radio Corp. of America v. Lord, 28 F.2d 257 (3d Cir. 1928) cert. denied 278 U.S. 648, 49 S.Ct. 83, 73 L. Ed. 560 (1928).

17. *Id.*

18. 269 F.2d 332 (4th Cir. 1959).

19. *Id.* at 339.

20. 340 F.Supp. 937 (E.D.Pa.1972).

21. *Id.* at 939.

22. *Id.* at 939.

23. 200 F.2d 911 (5th Cir. 1952) cert. denied, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953).

24. *Id.* at 915, 916.

25. Alles Corp. v. Senco Products, 329 F.2d 567, 569, (6th Cir. 1964).

A comparison of the averments in *Senco* with those in the case at bar is favorable. The Court apparently determined that the averment of the implied condition of exclusivity tacitly included an averment that there were leases or sales, or contracts for sale of goods conditioned on it. This may be a logical and practical avoidance of a technical omission in the pleadings if the point is not seriously challenged by the other side. In the case at bar, however, this is precisely the point in dispute.

The issue before the Court as respects Section 3 of the Clayton Act is whether there is a genuine issue as to the material fact of whether there was a lease, sale, or contract for sale of goods between the parties on the "forbidden condition" of exclusivity?

█ Having failed to aver that there were any leases, sales, or contracts for sale of goods on the forbidden condition, plaintiff has failed to set forth a violation of Section 3 of the Clayton Act. Were facts not otherwise, we would be inclined to dismiss this omission as a mere technical error and deny the defendant's Motion as was done in *Senco*. For example, the Complaint avers that plaintiff, E & F, dealt with other manufacturers of construction equipment. This averment would appear to be antagonistic if not mutually exclusive with a Section 3 claim. Furthermore, at oral argument counsel for plaintiff stated that there were no competitive products in the market and that, therefore, the exclusive provision was in a dormant or incipient state. Nor (in the Court's view) is this allegation consistent with a Section 3 claim. Not only can't plaintiff have it both ways, it can't have it either way.

Moreover, since E & F has failed to make out a cause of action under Section 3 of the Clayton Act it follows that it has also failed to state a claim under Section 2 of the Sherman Act. In Tampa Electric v. Nashville Coal Co., 365 U. S. 320, 335, 81 S.Ct. 623, 632, 5 L.Ed.2d 580 (1961), the Supreme Court stated: "We need not discuss the respondents' further contention that the contract also violates § 1 and § 2 of the Sherman Act, for if it does not fall within the broader proscription of § 3 of the Clayton Act it follows that it is not forbidden by those of the former."

█ Although we conclude that the Complaint in its present state must be dismissed, the Court is of the opinion that facts may exist which would support this cause of action. It is clear that paragraph 4 states a suspect exclusionary provision. In fact, a clearer suspect provision could hardly be found. This fact alone goes far in support of the plaintiff's cause. Antitrust litigation should not be disposed of without giving plaintiff a full opportunity to formulate their charges; Radovich v. National Football League, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957). Therefore, plaintiff will be granted twenty (20) days from the day of the filing of the following Order to amend their Complaint. If there is no amendment within that period the dismissal will be final and with prejudice.