**CAPITAL TELEPHONE COMPANY, INC., Plaintiff,**

v.

**CITY OF SCHENECTADY, NEW YORK; City Council of the City of Schenectady, New York; Frank Duci, Individually and in his capacity as Mayor of the City of Schenectady, New York; Karen Johnson, David W. Roberts, Howard Carpenter, James Tedisco, Thomas Isabella, Thomas Mullen, Individually and in their capacity as Council Members of the City Council of the City of Schenectady, New York; Dom Gallo, Joseph Notar, Individually and in their capacity as former Council Members of the City Council of the City of Schenectady, New York, Defendants.**

No. 82–CV–468.

United States District Court, N.D. New York.

Jan. 20, 1983.

Roland & Fogel, Albany, N.Y., for plaintiff; Keith J. Roland, Albany, N.Y., of counsel.

Mead, Begley & Quinlan, Schenectady, N.Y., for all defendants; William J. Quinlan, Schenectady, N.Y., of counsel.

MEMORANDUM–DECISION and ORDER

MINER, District Judge.

I

This action is brought pursuant to the provisions of Sections 1 and 2 of the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 and 2, and Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. Plaintiff's claims arise out of the denial by defendants of plaintiff's application for a franchise to pro-

vide line telephone service in the City of Schenectady. The jurisdiction of this Court is invoked pursuant to the provisions of 15 U.S.C. §§ 15 and 26, and the provisions of 28 U.S.C. § 1343. Before the Court is plaintiff's motion pursuant to Fed.R.Civ.P. 12(f) to strike defendants' affirmative defenses from the answer, and defendants' motion pursuant to Fed.R.Civ.P. 56(b) for summary judgment.

II

Under New York State's statutory scheme,[1] any enterprise seeking to establish a telephone service must first obtain the consent of the municipality in which it intends to operate. Having done so, the enterprise must then obtain a certificate of "public convenience and necessity"[2] from New York's Public Service Commission.[3] Pursuant to this statutory scheme, Dr. Peter A. Bakal, representing Capital Telephone Company, Inc. (hereinafter "Capital"), appeared before the Public Service and Utilities Committee of the Schenectady City Council on February 13, 1979 to request a franchise for the establishment of a "second landline telephone company" in Schenectady (hereinafter "City"). After this initial hearing, Dr. Bakal attended four subsequent hearings at which he presented additional information requested by the Committee.

Defendants[4] maintain that the information provided by Dr. Bakal was not sufficient for the City to determine that Capital was, in fact, capable of providing the proposed telephone services. Defendants claim that Capital failed to specify how many, or even which, streets it intended to excavate to lay its proposed telephone lines. The City also entertained doubts concerning Capital's financial ability to provide the line

---

1. See generally N.Y.Pub.Ser.Law § 90, et seq.

2. N.Y.Pub.Ser.Law § 99.

3. The Public Service Commission consists of five or more members appointed by the Governor of New York State. It is a creature of New York's legislature, and has been vested with broad powers concerning the supervision of

public utilities. See generally 48 N.Y.Jur. Public Utilities.

4. Named as defendants in this lawsuit are the City of Schenectady, its Mayor, and present and former members of the Schenectady City Council.

telephone service. In this regard, it is conceded that Dr. Bakal is Capital's sole stock owner, and that "the company would have to go public," (Exhibit Folder to Defendants' Memorandum in Support of Motion for Summary Judgment, p. 2) (hereinafter "EF"), to raise sufficient capital to provide the proposed telephone services. Apparently, it was not until the fifth meeting between the parties that Dr. Bakal provided a proposed financial plan. This proposal essentially outlined plaintiff's intention to raise public funds if the franchise were granted. Dr. Bakal's reluctance to provide detailed financial information apparently was prompted, in part, by a desire to avoid the cost of preparing a detailed financial statement unless he could be assured that Capital would receive the requested franchise. (EF, p. 21). Moreover, some of the information requested by the City was not capable of being provided before the granting of a franchise. (EF, p. 76). However, in light of the information furnished to the Committee, Capital's application for a franchise never was granted.

Capital's complaint alleges violations of Sections 1 and 2 of the Sherman Act, and Section 1 of the Civil Rights Act of 1871. Plaintiff also seeks attorneys' fees pursuant to the provisions of 42 U.S.C. § 1988. In their answer, defendants assert that plaintiff has not stated a claim upon which relief can be granted, and in any event, defendants are immune from any liability under the antitrust laws in accordance with the "state action" exemption thereto first enunciated by the Supreme Court in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Defendants also contend that they are entitled to a good faith immunity from any potential liability under either of plaintiff's claims, and that plaintiff's claims are barred by the tenth and eleventh amendments of the United States Constitution. Finally, defendants maintain that this suit is barred by plaintiff's failure to comply with the notice provisions contained in the New York General Municipal Law.

### III

■ There can be no doubt, in our society, of the important role played by the antitrust laws. As the Supreme Court has said:

> Antitrust laws in general, and the Sherman Act in particular, are the Magna Carta of free enterprise. They are as important to the preservation of economic freedom and our free enterprise-system as the Bill of Rights is to the protection of our fundamental personal freedoms. And the freedom guaranteed each and every business, no matter how small, is the freedom to compete-to assert with vigor, imagination, devotion and ingenuity whatever economic muscle it can muster.

*United States v. Topco Associates, Inc.*, 405 U.S. 596, 610, 92 S.Ct. 1126, 1135, 31 L.Ed.2d 515 (1972). However, "[i]n a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress." *Parker v. Brown, supra,* 317 U.S. at 351, 63 S.Ct. at 313. In this regard, the Supreme Court has found "nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." *Id.* at 350–351, 63 S.Ct. at 313–14. This deference to the states has come to be known as the "state action" exemption to the federal antitrust laws. Under this exemption doctrine, when a state directs, or acts in, some noncompetitive activity, the state and its officers are nonetheless exempt from the operation of the antitrust laws.

■ Unlike the several states, cities are not automatically within the *Parker* doctrine, *i.e.*, exempt from the operation of the antitrust laws. *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). To invoke the protection afforded by the *Parker* doctrine, a municipality must show that its anticompetitive conduct was taken "pursuant to

state policy to displace competition with regulation or monopoly public service." *Id.* at 413, 98 S.Ct. at 1137. This state policy must be one that is "clearly articulated and affirmatively expressed." *Id.* at 410, 98 S.Ct. at 1135. An additional requirement that the state policy be "actively supervised" also has been imposed by the Supreme Court. However, defendants question the application to municipalities of this additional requirement for a finding of state action.

This additional requirement was imposed by the Court in *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), where the state bar was found exempt from the federal antitrust laws while enforcing a state ban on advertising by lawyers. The requirement of active supervision was more recently applied in *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), with respect to private parties who claimed a state action exemption from the federal antitrust laws. Whether this additional showing must be made by a municipality purporting to implement a state policy is still open to some doubt, since the Court has indicated that private parties and municipalities are not necessarily to be insulated from antitrust laws under the same circumstances. *Lafayette v. Louisiana Power & Light Co., supra,* 435 U.S. at 410, n. 40, 98 S.Ct. at 1135, n. 40. Moreover, in *Community Communications Co., Inc. v. City of Boulder,* 455 U.S. 40, 51 n. 14, 102 S.Ct. 835, 841 n. 14, 70

L.Ed.2d 810 (1982), the Supreme Court stated, "[b]ecause we conclude in the present case that Boulder's moratorium ordinance does not satisfy the 'clear articulation and affirmative expression' criterion, *we do not reach the question whether that ordinance must or could satisfy the 'active supervision' test focused upon in Midcal."* (emphasis supplied). *Cf. Corey v. Look,* 641 F.2d 32 (1st Cir.1981) (imposing active supervision requirement on defendant town claiming state action immunity). In any event, this Court finds it unnecessary to determine if the "active supervision" requirement must be imposed here, since it is clear that the requirement has been satisfied.

█ Here, the action taken by the City of Schenectady, through its council, clearly was contemplated by New York's state legislature. Indeed, the authority to review and act upon an application for a telephone franchise has been expressly granted, *i.e.,* "affirmatively addressed," *Community Communications Co., Inc. v. City of Boulder, supra,* 455 U.S. at 54, 102 S.Ct. at 842, by the New York legislature in New York Public Service Law § 99.[5] This Court believes, therefore, that this grant of authority, an integral part of New York's scheme for the regulation of telephone utilities, satisfies the requirement of a "clearly articulated and affirmatively expressed" state policy.[6]

With respect to the additional requirement of "active supervision," this criterion is satisfied by New York's comprehensive

---

5. N.Y.Pub.Ser.Law § 99 provides in part:
Franchises and privileges.
   1. No telegraph corporation or telephone corporation hereafter formed shall begin construction of its telegraph line or telephone line without first having obtained the permission and approval of the commission and its certificate of public convenience and necessity, after a hearing had upon such notice as the commission may prescribe. *Before any such certificate shall be issued there must be filed in the office of the commission by the applicant therefor a verified statement showing that the required consent of the proper municipal authorities has been obtained.* (emphasis supplied).

6. Moreover, as additional evidence of New York State's policy to displace competition

with regulation in the provision of telephone services, this Court notes that application of the provisions of Article V of the Public Service Law has been suspended with respect to telegraph companies, but left in force with respect to telephone companies. In this regard, the Legislature expressly found that "since competition exists in communication by telegraph, the panoply of regulation required by the public service law does not appear to be necessary to assure adequate service at reasonable rates. The legislature further finds that such regulation may delay the implementation of advanced technology and generally limit customer choices...." N.Y.L.1981, c. 414, section 1. *See* N.Y.Pub.Serv.Law § 90(2).

regulatory scheme for the provision of telephone and telegraph services. *See generally* New York Public Service Law § 90, et seq. That statute provides, inter alia, that the Public Service Commission, in accordance with the provisions of New York Public Service Law § 94(2):

> shall have general supervision of all ... telephone corporations ... and telephone lines within its jurisdiction ... and shall have power to and shall examine the same and keep informed as to their general condition, their capitalization, *their franchises* and the manner in which their lines and property are leased, operated or managed, conducted and operated with respect to the adequacy of and accommodation afforded by their service and also with respect to the safety and security of their lines and property, *and with respect to their compliance with all provisions of law, orders of the commission, franchises and charter requirements.* (emphasis supplied).

New York Public Service Law § 94(2). Section 95 of the Public Service Law provides that telephone corporations shall submit verified annual reports to the Commission. Section 96 outlines the investigatory powers of the Commission with respect to telephone corporations, and §§ 100–101–a grant the Commission broad powers in regulating the corporate financial structure of telephone service providers. In light of the extensive regulatory scheme provided for in the New York Public Service Law, it is clear that New York State closely supervises the granting of franchises to, and the subsequent operations of, telephone corporations. Accordingly, this Court finds that defendants are entitled to the state action exemption to the federal antitrust laws as extended to municipalities by the Supreme Court in *Lafayette v. Louisiana Power & Light Co., supra.*[7] *See also Hopkinsville Cable TV, Inc. v. Pennroyal Cablevision, Inc.,* No. 81–0270–P(G) (W.D.Ken. March 11, 1982).

## IV

Plaintiff also asserts a claim pursuant to the provisions of 42 U.S.C. § 1983.[8] In determining whether plaintiff has established a § 1983 claim, this Court's inquiry must focus on 1) whether the conduct complained of was committed by a person acting under color of state law, and 2) whether the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Here, plaintiff has satisfied the first prong of this two prong test. Defendants readily admit that they acted under color of state law. However, plaintiff has not established the deprivation of any right, privilege or immunity secured to it by the Constitution or laws of the United States.

■ With respect to plaintiff's due process claim, this Court must determine whether plaintiff was deprived of a protected property or liberty interest, and if so, what

---

**7.** Having determined that defendants are entitled to a state action exemption from the federal antitrust laws, this Court need not decide defendants' contention that they, as agents of a single municipal corporation, are not capable of entering a conspiracy among themselves. *See,* e.g., *Nelson Radio and Supply Co., Inc. v. Motorola, Inc.,* 200 F.2d 911 (5th Cir.1952); *Person v. N.Y. Post Corp.,* 427 F.Supp. 1297 (E.D.N.Y. 1977), *aff'd. without opinion,* 573 F.2d 1294 (2d Cir.1977); *New Amsterdam Cheese Corp. v. Kraftco Corp.,* 363 F.Supp. 135 (S.D.N.Y.1973).

**8.** Paragraph "Twenty-Sixth" of the complaint includes the following allegation:

These activities were performed in violation of 42 U.S.C. § 1983, in that said acts were excessive, unnecessary, unwarranted, unjustified, without cause or probable cause, willfully, wantonly, maliciously, intentionally, without good faith and with clear intent to deprive the plaintiff of the rights, privileges and immunities secured to it under the Constitution of the United States of America and Acts of the Congress of the United States of America, which provide for equal rights and protection under law for citizens of the United States, and prohibit the taking of property without due process of law and which rights, privileges and immunities are guaranteed by the due process clause of the Constitution of the United States of America and 42 U.S.C. § 1983, *et seq.*

process was due it. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Here, plaintiff complains of defendants' failure to grant it a franchise to provide telephone service to the City of Schenectady. However,

> [t]he mere fact that plaintiff[ ] would like to have a [franchise], or that such a [franchise] would have great monetary value to [it], is not enough. As the Supreme Court has stated, 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' *Board of Regents v. Roth*, 408 U.S. 564 [92 S.Ct. 2701, 33 L.Ed.2d 548] . . . (1972).

*Gold Cross Ambulance v. City of Kansas City*, 538 F.Supp. 956, 971 (W.D.Mo.1982). Here, plaintiff cannot demonstrate any entitlement to the franchise which it seeks. At best, plaintiff has only a "need or desire" or "unilateral expectation" of acquiring the sought after franchise, and this Court need not determine what process was due plaintiff in the denial of his franchise application.[9] Accordingly, plaintiff has not established a deprivation of his due process rights arising out of the denial of his franchise application.

■ Plaintiff's equal protection claim also must fail. Plaintiff does not allege that "fundamental rights" arising under the Constitution or invidious discrimination involving "suspect classes" are implicated by the City's action. We are concerned here only with an economic regulatory scheme to supervise the operation of public utilities. Therefore, this Court need only apply a rational relationship test to the City's decision not to grant plaintiff's franchise application. *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

■ The obvious purpose of vesting in local municipalities the authority to grant or deny franchise applications is to insure the provision of efficient utility services to the consuming public. Moreover, the decision to deny plaintiff's application was based, at least in part, upon plaintiff's failure to demonstrate that it was capable of providing the proposed phone services.[10] In exercising its police powers for the benefit of the common weal, the city council was justified in requesting additional information from plaintiff, and it did not deny plaintiff equal protection of the law by denying the application when plaintiff did not adequately respond to its requests. *Bonacorsa v. Barry*, 664 F.2d 346 (2d Cir.1981). Accordingly, plaintiff has not established any denial of its right to equal protection under the law, and its § 1983 claim must also be dismissed.[11]

### V

For the reasons mentioned above, defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56(b) is granted. Plaintiff's motion to dismiss defendants' affirma-

9. However, there is no basis upon which to conclude that the hearings attended by Dr. Bakal on behalf of plaintiff fell below constitutional standards.

10. In contrast, defendant Mayor Duci believed that postponing action on plaintiff's franchise application would also improve the City's bargaining position. (EF, p. 77).

11. This disposition of plaintiff's § 1983 claim makes it unnecessary for this Court to determine whether defendants acted in good faith when they refused to grant plaintiff its franchise. However, "government officials performing discretionary functions generally are shielded from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, —— U.S. ——, ——, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Under this objective standard for determining whether a government official is entitled to a good faith immunity, and taking into account New York State's statutory scheme for the review by municipalities of franchise applications, it is probable that defendants could establish their entitlement to a good faith defense.

tive defenses pursuant to Fed.R.Civ.P. 12(f) is denied.

It is so Ordered.