BRONTEL, LTD., Plaintiff,

v.

The CITY OF NEW YORK, Philip R. Michael, as Commissioner of Finance of the City of New York, and Tax Commission of the City of New York, Defendants.

RENT CONTROL MEMORIAL CORP. and Brontel, Ltd., Plaintiffs,

v.

The CITY OF NEW YORK, Philip R. Michael, as Commissioner of Finance of the City of New York, and Tax Commission of the City of New York, Defendants.

Nos. 82 Civ. 2664, 2666.

United States District Court, S.D. New York.

Sept. 23, 1983.

Martin R. Fine, New York City, for plaintiff.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City, for defendants; Steven Resnick, Asst. Corp. Counsel, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This is still another action by plaintiffs, who over the years have engaged in extensive litigation with the City of New York, its Tax Commission and others (collectively "the City"), challenging the City's tax assessments on three of plaintiffs' properties. Plaintiffs acquired the properties in 1975 and 1976 and to date have not paid a single penny of assessed taxes, not even the amount due based upon their own estimate of fair valuation for tax purposes. In 1981 the City acquired title to the three properties pursuant to *in rem* judgments of foreclosure entered in the Supreme Court of the State of New York because of nonpayment of real estate taxes.[1] Plaintiffs have challenged the foreclosure proceedings since their commencement in 1977. This action is a further attempt to overcome the judgments of foreclosure and regain the properties. Plaintiffs' twice amended complaint contains fourteen prolix and widely discursive claims that, stripped to essentials, allege:

(1) The City violated plaintiffs' right to due process of law and deprived them of their property in violation of the Fourteenth Amendment by denying them a prompt determination of certiorari proceedings they had instituted to challenge the assessments on the properties;

(2) The City restrains trade by imposing rent control upon privately owned property, and monopolizes trade by exempting city-owned property from rent control and other local laws regarding residential buildings, in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2, 3;

(3) The City's rent control, property tax, and housing laws and regulations have destroyed the value of plaintiffs'

properties and therefore constitute an inverse condemnation or "taking" for which just compensation is required by the United States and New York Constitutions;

(4) The City's rent control regulations impair the obligation of contracts in violation of article I, section 10 of the United States Constitution;

(5) The City unlawfully refused to allow plaintiffs to redeem the properties;

(6) The City destroyed a building on one of the premises, without notice to plaintiffs, and without reason;

(7) The City breached an alleged agreement to settle this litigation.

The City moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6) and 56 for failure to state a claim upon which relief can be granted and on the grounds of *res judicata* and collateral estoppel. The plaintiffs cross-moved pursuant to Fed.R.Civ.P. 65 for a preliminary injunction enjoining the City from continuing its alleged violations of law pending a trial of the issues. Each side submitted extensive affidavits and briefs in support of their respective positions. The motion for a preliminary injunction was denied upon the conclusion of oral argument as utterly lacking in substance.

## THE DEFENSE OF RES JUDICATA AND COLLATERAL ESTOPPEL

■ The rule of *res judicata* provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter barred from relitigating the same cause of action in a subsequent suit, absent fraud or some other factor invalidating the judgment.[2] The doctrine extends not only to issues actually determined, but also to the claims that

---

1. The City maintains that it acquired one of the properties in 1978 rather than 1981, and that the claims as to that property are barred by the statute of limitations. It is unnecessary to reach that issue, however, because the claims are dismissed on other grounds, as explained *infra*.

2. *Sea-Land Services Inc. v. Gaudet*, 414 U.S. 573, 578–79, 94 S.Ct. 806, 811–12, 39 L.Ed.2d 9 (1974); *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1232–33 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

could have been raised in the prior action.[3] Under the doctrine of collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in a subsequent suit on a different cause of action involving a party to the prior litigation.[4] These related defenses of collateral estoppel and *res judicata,* advanced by the City in support of its motion, require an examination of the long and convoluted prior litigation that preceded the instant action.

*The prior state court litigation*

In 1977, the City commenced In Rem Action No. 29 in the Supreme Court of the State of New York to foreclose all properties in New York City that were delinquent in taxes, including the three properties owned by plaintiffs: 28 West 116th Street, 415 East 12th Street, and 12 East 116th Street. Plaintiffs opposed the foreclosure action, denying that they were in arrears in the payment of "lawfully assessed" taxes and charges, and asserting two counterclaims. The first alleged that the City had confiscated the properties through the application of rent control laws, without just compensation, in violation of the New York and United States Constitutions, and sought damages. The second asserted that the properties were not properly subject to a foreclosure action because tax certiorari proceedings[5] were pending that challenged the legality of the assessments.

Plaintiffs' properties were severed from Action No. 29 in May, 1978. The City then moved for summary judgment of the severed foreclosure claim. Plaintiffs cross-moved for leave to amend their answers and for an order consolidating the foreclosure action with their tax certiorari actions. Plaintiffs also joined with Friarton Estates, and other litigants not relevant here, seeking class action certification and consolidation of the City's foreclosure Action No. 29 with Action No. 30, which the City had commenced in August, 1978.

On August 31, 1979, Justice Martin Evans, of the New York Supreme Court, granted plaintiffs' motion to consolidate Actions No. 29 and 30, and granted in part their motion to amend their answers. The answers as amended retained the counterclaim charging that the City's rent control laws were unconstitutional, and alleged as an affirmative defense that it would be inequitable to foreclose the properties while tax certiorari proceedings were pending and a denial of due process to allow the City to proceed with its *in rem* foreclosure actions absent a consolidation of their pending certiorari proceedings. After considering the answers as amended, Justice Evans granted summary judgment in favor of the City. He severed the counterclaim regarding the constitutionality of rent control. He denied consolidation of the foreclosure and certiorari actions, stating:

It would, of course, be inequitable to allow In Rem foreclosure under Title D of the Administrative Code, which could result in a transfer of title to the City, if in fact the taxes were improperly over-assessed and if defendant did not have a reasonable opportunity to obtain a proper assessment. Such a transfer of title would be an unconstitutional taking of property without compensation.

However, he found that:

... the City has shown that taxes were properly assessed and have not been paid. Although the pleadings of the defendant allege that all taxes lawfully due have been paid, it is clear from the affidavits submitted on the motion that not only is there a default in the payments of the amount of taxes assessed; there has been a default in the payments of the amount

**3.** *Sea-Land, supra* note 2, at 579, 94 S.Ct. at 812.

**4.** *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979).

**5.** For a description of the New York procedures for review of real estate tax assessments, including the tax certiorari procedures, *see Friarton Estates Corp. v. City of New York,* 681 F.2d 150, 152–54 (2d Cir.1982).

admitted by defendants to have been properly due.

On May 20, 1980, an amended supplemental judgment of foreclosure was entered and the City was awarded possession of the properties. Plaintiffs and Friarton appealed to the Appellate Division, arguing again that the tax assessments were excessive because rent control had depressed the value of the properties, and that foreclosing the properties without affording plaintiffs an opportunity to challenge the tax assessments in certiorari proceedings denied plaintiffs due process of law. The Appellate Division affirmed without opinion.[6]

Plaintiffs and Friarton appealed to the New York Court of Appeals, which dismissed the appeal "upon the ground that no substantial constitutional question is directly involved."[7] The City then moved to enforce the amended supplemental judgments of foreclosure. Plaintiffs and Friarton cross-moved to vacate the foreclosure judgments, on the grounds of newly discovered evidence, and fraud and misrepresentation by the City in its "repeated stat[ments] that trials on the merits of the taxes could be obtained promptly ... and represent[ations] to the owners and to this Court that the certiorari proceedings would come to trial 'by the fall of 1980.'" Justice Evans denied the plaintiffs' motion to vacate the foreclosure judgments, and the City finally acquired title to the properties on August 11, 1981. Plaintiffs and Friarton

petitioned the United States Supreme Court for certiorari, which was denied.[8]

*The prior federal court litigation*

Friarton then filed an action in the Southern District of New York with respect to the eight properties it had owned. It sought an injunction against enforcement of the foreclosure judgments until the state tax certiorari proceedings had been concluded, and damages for alleged violations of its constitutional rights. The District Court granted a preliminary injunction;[9] the Second Circuit reversed, holding that Friarton's constitutional claims were barred by the *res judicata* effect of the state court proceedings.[10]

In April, 1982, after argument of the appeal, but before the Court of Appeals handed down its decision, plaintiffs, who had not joined the *Friarton* action, brought this action, seeking the same relief Friarton had sought. When the City moved to dismiss plaintiffs' initial complaint in this action, plaintiffs applied for and were granted leave to serve an amended complaint, which contained antitrust, takings, tort and contract claims.

*Res Judicata Effect of the Prior State Litigation*

■ Plaintiffs' claim that the City violated their right to due process by foreclosing their properties without affording them an adequate opportunity to challenge the tax assessments, and their claim that the City has taken their properties without just compensation, however variously alleged,[11]

6. 79 A.D.2d 899, 435 N.Y.S.2d 872 (N.Y.App. Div.1980).

7. 53 N.Y.2d 795, 439 N.Y.S.2d 1031, 422 N.E.2d 597 (N.Y.1981).

8. 454 U.S. 837, 102 S.Ct. 141, 70 L.Ed.2d 117 (1981).

9. 525 F.Supp. 1250 (S.D.N.Y.1981), *rev'd,* 681 F.2d 150 (2d Cir.1982).

10. 681 F.2d 150 (2d Cir.1982).

11. In this action, plaintiffs style their takings claim as "inverse condemnation," alleging that the combination of rent control, housing regulations and tax assessments have so destroyed the value of their properties as to be a condem-

nation for which just compensation is required. But as this Court has previously noted, "[a] shift in legal theories or a new or different ground for relief sought does not of itself work magic and dissolve the defense of *res judicata* .... [A] plaintiff cannot 'escape the effect of the adverse determination by clothing the claim in a different garb.'" *Goldstein v. Doft,* 236 F.Supp. 730, 734 (S.D.N.Y.1964), *aff'd,* 353 F.2d 484 (2d Cir.1965), *cert. denied,* 383 U.S. 960, 86 S.Ct. 1226, 16 L.Ed.2d 302 (1966) (quoting *Frost v. Bankers Commercial Corp.,* 11 F.R.D. 195 (S.D.N.Y.1951), *aff'd,* 194 F.2d 505 (2d Cir. 1952)). As Judge Friendly noted in *Friarton,* plaintiffs' claim that foreclosure of the properties was an unconstitutional taking was denied on the merits by the state court. *Friarton, supra* note 10 at 159. Plaintiffs cannot relitigate that claim merely by arguing now that it is

were presented to, and passed upon by, the New York State trial and appellate courts. As Judge Friendly stated in the *Friarton* federal litigation, in referring to the state court action in which plaintiffs were joined with Friarton, the record "leaves no room for doubt that the claims of lack of due process and taking of property without just compensation were fully presented to the New York courts, and that those courts entertained them but denied them on the merits."[12] More specifically, he noted:

> All the constitutional contentions . . . the long delays in the proceeding of certioraris, the inequity of foreclosure for failure to pay possibly erroneous taxes without an opportunity for timely challenge, the allegedly unsatisfactory character of the remedies of partial payment which plaintiffs had by virtue of statute and of the City's ad hoc offer—were advanced not once but time and again at each of the three levels of the New York court system and on petition for certiorari to the United States Supreme Court.[13]

The plaintiffs' persistent disregard of the state court judgment underscores Judge Friendly's observation in *Friarton:*

> On any view a taxpayer may not engage in extensive proceedings throughout the state court system, and then, after every point has been decided against him by the state courts and the Supreme Court has denied certiorari, make a fresh start in

the laws allegedly causing the foreclosure, such as rent control, that constitute the taking.

In addition, the constitutionality of rent control is well established. *See, e.g., Bowles v. Willingham,* 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944); *Eisen v. Eastman,* 421 F.2d 560 (2d Cir.1969), *cert. denied,* 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970); *Somerset-Wilshire Apartments, Inc. v. Lindsay,* 304 F.Supp. 273 (S.D.N.Y.1969); *Stoneridge Apts. Company v. Lindsay,* 303 F.Supp. 677 (S.D.N.Y.1969); *Israel v. City Rent and Rehab. Admin. of City of New York,* 285 F.Supp. 908 (S.D.N.Y.1968); *Benson v. Beame,* 50 N.Y.2d 994, 431 N.Y.S.2d 475, 409 N.E.2d 948 (N.Y.1980), *appeal dismissed,* 449 U.S. 1119, 101 S.Ct. 933, 67 L.Ed.2d 106 (1981).

12. *Friarton, supra* note 10 at 159.

13. *Id.* at 158.

federal court. These considerations are of particular pertinence where a federal court plaintiff seeks further delay in the collection of city taxes of which, in state court proceedings, he has thwarted collection, even of water and sewage charges, for eight years.[14]

Judge Friendly directed the dismissal of the plaintiffs' complaint because it "had no equity to support it."[15]

It is abundantly clear that plaintiffs' due process and takings claims were presented to and determined by the state courts in an action in which they were parties. Accordingly, the claims are dismissed because they are barred by *res judicata.*[16] However, this is not true as to the antitrust, tort, contract and unlawful refusal to redeem claims first advanced in the second amended complaint. The antitrust claims were not pleaded in the state courts, which have no jurisdiction to decide federal antitrust claims.[17] The tort, contract and unlawful refusal to redeem claims are based upon events alleged to have occurred after the entry of final judgment in the state court.

## THE ANTITRUST CLAIMS

The City argues that the antitrust claims fail to state a claim upon which relief can be granted because the City's actions fall within the *Parker v. Brown*[18] state action

14. *Id.* at 159.

15. *Id.* at 161.

16. Plaintiffs' argument that the prior judgment should have no *res judicata* effect because it was procured by fraud is without merit. As indicated previously, plaintiffs raised the fraud argument in their motion to vacate the judgment, and Justice Evans denied that motion.

17. *Capital Tel. Co., Inc. v. Pattersonville Tel. Co.,* 81 A.D.2d 970, 439 N.Y.S.2d 759 (N.Y.App. Div.1981), *aff'd,* 56 N.Y.2d 11, 451 N.Y.S.2d 11, 436 N.E.2d 461 (N.Y.1982). *See Lyons v. Westinghouse Elec. Corp.,* 222 F.2d 184 (2d Cir.), *cert. denied,* 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955).

18. 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

exemption to antitrust laws.[19] In *Parker,* the Supreme Court held that a program to restrict competition and maintain prices among raisin growers was exempt from antitrust laws because the program "derived its authority ... from the legislative command of the state" and "nothing in the language of the Sherman Act or in its history ... suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature."[20]

The Supreme Court addressed the availability of the *Parker* exemption to a state's municipalities in two recent cases. In *Lafayette v. Louisiana Power and Light Co.,*[21] a plurality of the Court held that *Parker* applies to municipalities if they are acting "pursuant to a state policy to displace competition with regulation or monopoly public service."[22] A majority of the Court adopted the *Lafayette* standard in *Community Communications Co. v. Boulder,*[23] holding that a city is exempt from antitrust scrutiny only if its action "constitutes the action of the state ... itself in its sovereign capacity ... or unless it constitutes municipal action in furtherance or implementation of clearly articulated and affirmatively expressed state policy."[24]

■ The City's rent control regulations are in furtherance or implementation of clearly articulated and affirmatively expressed state policy, and thus come within the *Parker* exemption. New York's Local Emergency Housing Rent Control Act,[25] adopted in 1962, specifically states that the "legislature hereby finds that a serious public emergency continues to exist in the housing of a considerable number of persons in the state of New York," and that "the transition from regulation to a normal market of free bargaining between landlord and tenant, while still the objective of state policy, must be administered with due regard for such emergency."[26] Accordingly, the Act gives New York City (and some other cities in the state) the authority to determine whether rent control is necessary, and to adopt and administer local laws or ordinances regarding the regulation and control of rents.[27]

Further, the Act specifically mandates that the City exempt housing accommodations it owns and operates from rent control. The Act provides that "no local law or ordinance shall hereafter provide for the regulation and control of residential rents ... [in] any housing accommodations which are (1) presently exempt from such regulation and control ...."[28] At the time the Act was passed, "housing accommodations owned and operated by ... the State of New York or any political subdivision thereof, or by a municipal or public authority" were exempt from rent control.[29]

Thus, New York has clearly and affirmatively expressed a policy that the City

---

**19.** The City also contends that plaintiffs' antitrust claim is barred by the collateral estoppel effect of the *Friarton* federal litigation. They allege that plaintiffs' attorney here, who is also plaintiffs' Vice President, acted as counsel to the *Friarton* plaintiffs in their federal action, and was *Friarton's* principal officer. The City maintains that through him plaintiffs "assumed control over" the *Friarton* litigation "in aid of some interest of [their] own" and thus should be bound by *Friarton,* in which the antitrust claims could have been presented. *Montana v. United States, supra* note 4, at 159, 99 S.Ct. at 976. While there may be some substance to this contention, the Court prefers to decide the antitrust claim upon the merits of the City's motion to dismiss for failure to state a claim.

**20.** *Parker, supra* note 18, at 350–51, 63 S.Ct. at 313.

**21.** 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978).

**22.** *Id.* at 413, 98 S.Ct. at 1136.

**23.** 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982).

**24.** *Id.* at 52, 102 S.Ct. at 841.

**25.** N.Y.Unconsol.Laws §§ 8601–8617 (McKinney 1974).

**26.** *Id.* at § 8602.

**27.** *Id.* at §§ 8603, 8605.

**28.** *Id.* at § 8605.

**29.** N.Y.Unconsol.Laws § 8582 (McKinney 1974). *See also* 9 NYCRR, Subtitle S, Chapter VII, Subchapter B § 2100.9.

should control residential rents if it deems such control necessary, but that it should not subject its own properties to such regulations. The legislature "contemplated the kind of action complained of" by plaintiffs here.[30] Accordingly, under *Lafayette* and *City of Boulder,* the antitrust claims must be dismissed.[31]

### THE IMPAIRMENT OF THE OBLIGATIONS OF CONTRACTS CLAIM

■ Plaintiffs charge that rent control and other housing regulations impair the obligation of contracts, in violation of article I, section 10 of the United States Constitution. The claim is dismissed. It is well established that the City's rent control laws do not unconstitutionally impair contract rights.[32]

### THE CLAIM OF UNLAWFUL REFUSAL TO REDEEM THE PROPERTIES

Under N.Y.C.Admin.Code § D17–25, former owners may apply to redeem properties which the City has foreclosed. If the former owner applies for redemption within four months of the City's acquisition of the property, and pays the outstanding taxes and other charges, redemption is mandato-

ry. If the former owner applies for redemption after four months, but within two years, of the City's acquisition, redemption is at the discretion of the City's Board of Estimate. Plaintiffs charge that the City has unlawfully refused to process their applications for redemption, which they filed on the last day of the two-year period.

■ According to the complaint, the City's refusal was based upon plaintiffs' failure to comply with a requirement that the title search submitted in support of a redemption application reflect the date the deed was recorded. Plaintiffs maintain that they were unable to comply with that requirement because of the manner in which the City indexes its records, and that the City's insistence on their compliance with the requirement was therefore a denial of due process. The facts alleged do not support a denial of due process claim. Because the City legally foreclosed the properties, and the period for mandatory redemption had passed, plaintiffs' only "property" interest was in having the Board of Estimate follow its own rules and regulations regarding discretionary redemption.[33] Plaintiffs have not been deprived of that interest.

**30.** *Lafayette, supra* note 21, at 415, 98 S.Ct. at 1138.

**31.** *City of Boulder, supra* note 23, specifically left open the question of whether the challenged municipal action must meet an "active state supervision" test in addition to *Boulder's* "clearly articulated and affirmatively expressed state policy" test. *Boulder, supra* note 23, at 51 n. 14, 102 S.Ct. at 841 n. 14. The active state supervision test was applied by the Court in *California Liquor Dealers v. Midcal Aluminum,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1979), a case involving private parties who claimed a state action exemption from the antitrust laws. The Second Circuit has not ruled on whether the active state supervision test is applicable to municipalities. *See Capital Telephone Company, Inc. v. City of Schenectady,* 560 F.Supp. 207 (N.D.N.Y.1983). Other circuits have split on the issue. *Compare Gold Cross Ambulance & Transfer v. City of Kansas City,* 705 F.2d 1005 (8th Cir.1983), *Town of Hallie v. City of Eau Claire,* 700 F.2d 376 (7th Cir.1983), *petition for cert. filed,* 51 U.S.L.W. 3842 (U.S. May 24, 1983) (No. 82–1832), and *Pueblo Aircraft Service, Inc. v. City of Pueblo, Colorado,* 679 F.2d 805 (10th Cir.1982) (active

state supervision test is not applicable to municipalities) *with Corey v. Look,* 641 F.2d 32 (1st Cir.1981) (applying the active state supervision test to municipalities). *See also* Areeda, Antitrust Immunity for "State Action" after *Lafayette,* 95 Harv.L.Rev. 435, 445 n. 50 (1981).

The Court finds it unnecessary to decide whether active state supervision is necessary for municipal exemption from antitrust laws, because such supervision is present here. The need for continued rent control is an oft-addressed topic in the legislature, as is evidenced by the legislature's repeated extension of the expiration date of state rent control laws, and its recent amendments to the exemption from rent control for city-owned properties. *See, e.g.,* Act of July 27, 1982, ch. 845, 1982 N.Y. Laws; Act of June 30, 1981, ch. 383, 1981 N.Y.Laws.

**32.** *Marcus Brown Holding Co. v. Feldman,* 256 U.S. 170, 198, 41 S.Ct. 465, 466, 65 L.Ed. 877 (1921); *Israel v. City Rent & Rehab. Admin. of City of New York, supra* note 11.

**33.** *See International House v. National Labor Relations Bd.,* 676 F.2d 906 (2d Cir.1982).

Thus plaintiffs advance no substantial federal question. Their complaint seems to be that the City's refusal was an abuse of discretion and contrary to state law. The Court declines to exercise pendent jurisdiction over that claim, however, because all plaintiffs' federal claims are being dismissed before trial.[34]

### THE CONTRACT CLAIM

■ Plaintiffs claim that the City has breached an alleged settlement contract, which they maintain obligates the City to reduce the tax assessments on the properties and return title to the properties to plaintiffs. The City denies that the purported contract was ever consummated, and the parties differ as to the terms of the alleged agreement. Whatever the facts, the issue should be decided by the state courts, and this Court declines to exercise pendent jurisdiction.

### THE DESTRUCTION OF PROPERTY WITHOUT NOTICE CLAIM

■ Finally, plaintiffs allege that the City destroyed a building on one of the properties without first giving notice to plaintiffs, and without good cause. Demolition of a building without notice to the owner may constitute a denial of due process.[35] However, plaintiffs were not the owners of the property in question when the building was destroyed in May, 1983—the City legally acquired title to the property on August 11, 1981.

Plaintiffs' federal claims are each dismissed for failure to state a claim for which relief can be granted. Plaintiffs' state law contract and abuse of discretion claims are dismissed because the Court declines to assert pendent jurisdiction.

So ordered.

---

**34.** *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *McLearn v. Cowen & Co.,* 660 F.2d 845 (2d Cir.1981).

**35.** *See Burtnieks v. City of New York,* 716 F.2d 982 (2d Cir.1983).