**MULTI-STATE COMMUNICATIONS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 85 Civ. 9593 (CHT).**

United States District Court, S.D. New York.

Nov. 6, 1986.

Keck, Mahin & Cate, Washington, D.C., Lewis J. Paper, for plaintiff Multi-State Communications, Inc.; Charles O. Blaisdell, White Plains, N.Y., of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for the Government; Richard W. Mark, Asst. U.S. Atty., Sue Ann Preskill, F.C.C., of counsel.

TENNEY, District Judge.

This is an action commenced in December 1985 by Multi-State Communications, Inc. ("Multi-State") against the United States seeking a declaratory ruling pursuant to 28 U.S.C. §§ 2201, 2202 that section 331 of the Communications Act of 1934, 47 U.S.C. § 331 (Supp.1986),[1] is unconstitu-

---

1. Section 331 provides, in pertinent part:

In any case in which [a] licensee of a very

tional "because it is retroactive legislation which has had and continues to have an undue[,] harsh and oppressive impact on" Multi-State; that Multi-State filed its application for a license to operate channel 9, WOR–TV in reliance on existing principles of law; that it expended large sums of money prosecuting its application; and that § 331 unexpectedly extinguished its right to a hearing. Complaint ¶¶ 1, 37. The defendant United States of America ("Government") has moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6) and 56(b) for failure to state a claim upon which relief can be granted and upon the grounds of *res judicata.* The parties having submitted briefs and oral arguments, the Court concludes that the principle of *res judicata* bars the present action.

## BACKGROUND

Since 1972, Multi-State has undertaken extensive efforts to obtain the license to operate television station WOR–TV, channel 9 ("WOR"), which has been operated by RKO General, Inc. ("RKO") since 1952. However, in the midst of a comparative hearing proceeding before the Federal Communications Commission ("FCC") in which Multi-State attempted to obtain the WOR license by challenging RKO's qualifications to operate the station, legislation was passed by Congress which in effect encouraged licensees to move their stations to states which had no television service. Section 331 of the Communications Act of 1934 accomplished this by streamlining the hearing procedures related to such moves. *Multi-State Communications, Inc. v. FCC,* 728 F.2d 1519, 1525 (D.C.Cir.1984). Since it appeared that RKO's license to operate WOR might be in jeopardy due to Multi-State's opposition, RKO took advantage of the opportunity provided by section 331 to move the station from New York to New Jersey. The FCC, following what it

perceived to be the mandate of section 331, awarded RKO a new license for the New Jersey station without a comparative hearing and dismissed Multi-State's competing application to operate WOR as a New York channel on the ground of mootness. *Id.* at 1522.

The present action is Multi-State's second attempt to challenge the actions of the Government which prevented it from obtaining the license to operate WOR. In 1984, the D.C. Circuit Court of Appeals held that the FCC correctly interpreted section 331 as requiring it to grant RKO a new five-year license to operate WOR in New Jersey. *Multi-State Communications, Inc. v. FCC,* 728 F.2d 1519, 1526 (D.C.Cir.1984). The court of appeals further held that the dismissal of Multi-State's competing application to operate WOR did not unlawfully deprive it of due process rights. *Id.* at 1525–26.

## DISCUSSION

### 1. *The principle of res judicata*

▉ Under the principle of *res judicata* or claim preclusion, a final judgment on the merits of an action rendered by a court of competent jurisdiction bars the parties to that suit and those in privity with them from relitigating in a subsequent suit any claims that were, or could have been raised in the prior action. *See Brontel, Ltd. v. City of New York,* 571 F.Supp. 1065, 1067–68 (S.D.N.Y.1983), *aff'd mem.,* 742 F.2d 1439 (2d Cir.), *cert. denied,* 469 U.S. 882, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984). The Supreme Court has articulated the following policy reasons to support application of the *res judicata* doctrine: "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and

high frequency commercial television broadcast station notifies the [FCC] to the effect that such licensee will agree to the reallocation of its channel to a community within a State in which there is allocated no very high frequency commercial television broadcast

channel at the time [of] such notification, the [FCC] shall, notwithstanding any other provision of law, order such reallocation and issue a license to such licensee for that purpose. 47 U.S.C. § 331 (Supp.1986).

fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). Thus, the *res judicata* doctrine will bar subsequent litigation when there is an identity of claims, a full and fair opportunity to litigate those claims in the first action, and privity between the parties to the two actions. *See Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1233 (2d Cir.1977), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

### 2. *The prior litigation*

In the prior litigation before the D.C. Circuit Court of Appeals,[2] Multi-State articulated a number of different arguments to support its claim that the dismissal of its application for the WOR license was incorrect. Only one of those arguments, the last to be addressed by the court of appeals, concerns us here. In the section of its opinion entitled "The Alleged Constitutional Violation," 728 F.2d at 1525–26, the court of appeals addressed Multi-State's argument that "its constitutional right to due process was violated when the FCC applied section 331 to deprive Multi-State of its vested right to a comparative hearing." *Id.* at 1525. The court of appeals rejected Multi-State's claim that its right to a hearing before the FCC was constitutionally guaranteed, holding that the hearing right was statutory, and that in the limited context of section 331, Congress had made the statutory hearing procedures moot. *Id.* The court of appeals further concluded that Congress was execising its lawful powers under the commerce clause when it passed section 331 and its actions did not offend the due process clause. *Id.* at 1526, n. 12.

Multi-State then petitioned for a writ of certiorari, which was denied, 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 358 (1984).

### 3. *Res judicata effect of the prior litigation*

### A. *Identity of claims*

Multi-State unconvincingly attempts to recharacterize its due process claim in the present action to differentiate it from the due process claim raised in the prior action. However, this Court has noted on previous occasions that "[a] shift in legal theories or a new or different ground for relief sought does not of itself work magic and dissolve the defense of *res judicata....* [A] plaintiff cannot 'escape the effect of the adverse determination by clothing the claim in a different garb.'" *Brontel, Ltd. v. City of New York,* 571 F.Supp. at 1069 n. 11, *quoting Goldstein v. Doft,* 236 F.Supp. 730, 734 (S.D.N.Y.1964), *aff'd,* 353 F.2d 484 (2d Cir. 1965), *cert. denied,* 383 U.S. 960, 86 S.Ct. 1226, 16 L.Ed.2d 302 (1966).

It is clear that the claims in the two actions are the same—injury to Multi-State's due process rights—and Multi-State is merely articulating a different theory to support its due process claim. The Court concludes that Multi-State's failure to assert all theories of recovery available to it in the prior proceeding bars it from now asserting before this Court new theories of recovery on the same claim.

### B. *Full and Fair Opportunity to Litigate*

Multi-State asserts that it should not be barred from relitigating the constitutional issue in the present action because this is its first full and fair opportunity to litigate that issue. Multi-State argues that it is entitled to present to a district court specific facts demonstrating the harsh and oppressive impact that resulted when section 331 was applied to retroactively deprive it of a hearing. At oral argument, Multi-State indicated that it would like to develop a hearing record demonstrating the amount of time and money it expended in its pur-

---

**2.** The Communications Act provides that an applicant for a construction permit may appeal from the FCC's denial of its application to the D.C. Circuit Court of Appeals. *See* 47 U.S.C. § 402(b)(1) (1962). The Communications Act further provides that such appeals are to be heard and determined pursuant to the Administrative Procedure Act, 5 U.S.C. § 706 (1977). *See* 47 U.S.C. § 402(g) (Supp.1986).

suit of the WOR license. Multi-State apparently contends that the court of appeals is incompetent to properly adjudicate issues concerning the constitutionality of statutory provisions and agency actions. However, the Communications Act provides that appeals from denials of construction permits are governed by the Administrative Procedure Act,[3] which states: "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and ... hold unlawful and set aside agency action, findings, and conclusions found to be ... contrary to constitutional right, power, privilege, or immunity...." 5 U.S.C. § 706(2)(B) (1977). Thus, the D.C. Circuit Court of Appeals had the authority to address the constitutional issue presented by Multi-State, and had the further opportunity to remand to the FCC for development of a factual record, if necessary. *See FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 469, 104 S.Ct. 1936, 1940, 80 L.Ed.2d 480 (1984). The constitutional issue was presented by Multi-State's challenge to the FCC's actions and Multi-State had a full and fair opportunity to present the facts concerning its expenditure of time and effort in pursuit of the WOR license in the prior proceeding.[4] Thus, it is not entitled to relitigate its constitutional challenge to section 331 in this Court.

### C. *Privity of the Parties*

■ Finally, Multi-State contends that the FCC, the defendant in the prior litigation, is not in privity with the Government, the defendant in the present action. The

Court finds this contention to be totally unsupportable. As the Supreme Court stated in *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940):

> There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government.... The crucial point is whether or not in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy.

*Id.* at 402–03, 60 S.Ct. at 916–17 (citations omitted). It is beyond question that Congress, by enacting the Communications Act of 1934, gave the FCC a comprehensive mandate to regulate interstate communications. *See United States v. Southwestern Cable Co.*, 392 U.S. 157, 173, 88 S.Ct. 1994, 2003, 20 L.Ed.2d 1001 (1968). As it is "charged with broad responsibilities for the orderly development of an appropriate system of local television broadcasting," *id.* at 177, 88 S.Ct. at 2005, the FCC clearly had the authority to defend the constitutionality of section 331 in the prior litigation. Regardless of whether one or more FCC commissioners expressed doubts about the constitutionality of section 331,[5] the fact is that the court of appeals upheld the statute on constitutional grounds. Multi-State's assertion that it should now be entitled to a second chance to challenge the statute because the Government did not have a proper opportunity to defend the statute during

---

3. See *supra* note 2.

4. As the Government notes in its reply brief, Multi-State emphasized these facts to the D.C. Circuit Court of Appeals. Although the briefs submitted to the court of appeals are not presently before this Court, Multi-State does not dispute the accuracy of the Government's reply brief to this Court, which quotes Multi-State's argument to the Court of Appeals that:

> [as] an applicant for Channel 9 ... Multi-State, in full reliance upon existing principles of law, expended huge sums of money and it has contested with RKO General in every fo-

rum, administrative and judicial, for more than 10 years. Its dedicated pursuit of its vested right to a comparative hearing for the license of Channel 9 has required not only the investment of substantial resources, but also the tremendous expenditure of professional skill and effort.

Brief for the Government at 5.

5. *See Channel 9 Reallocation (WOR–TV)*, 5 Rad. Reg.2d 469, at 472c, n. 5 (statement of Commissioners Rivera and Fogarty).

the first proceeding turns the principle of *res judicata* on its head. Regardless of whether section 331 would have been defended more vigorously in the prior litigation by the Justice Department than by the FCC, either of them had the authority to do so. The Court holds that the FCC is in privity with the Government for purposes of applying *res judicata* principles to the present litigation. *See Mervin v. FTC,* 591 F.2d 821, 829–31 (D.C.Cir.1978) (dismissal of plaintiff's action against Civil Service Commission by district court held to have *res judicata* effect in subsequent district court action against FTC); *United States v. Yonkers Board of Education,* 594 F.Supp. 466, 476 (S.D.N.Y.1984) ("Relief that binds the United States also binds its subordinate officers and agencies....").

### CONCLUSION

In sum, the Court concludes that the doctrine of *res judicata* bars the present action. Accordingly, defendant's motion for summary judgment in its favor is granted and plaintiff's complaint is dismissed.

So ordered.